UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ROSE VILLA, | ) No. CV 09-03983-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") erred in

```
                weighing the assessments of treating, examining and non-
                examining physicians and erred in determining Plaintiff's
                residual functional capacity ("RFC");
        2.      Whether the ALJ properly considered the effect of
                Plaintiff's diabetes on her RFC; and
        3.      Whether the ALJ properly summarized and weighed Plaintiff's
                testimony and made proper credibility findings.
```
(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

**I**

**INTRODUCTION**

**A.   Standard of Review**.

The Commissioner's denial of benefits to Plaintiff is reviewed by this Court on a substantial evidence basis; that is, the denial of benefits is reversed if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

**B.   Statement of the Case**.

Plaintiff suffered an industrial injury on April 6, 2005 (AR 207). She was employed as a warehouse stocker from 1999 to May 2005. She last worked in May 2005. (AR 153-154, 158.)

## II

## THE ALJ'S ASSESSMENT OF THE EXAMINING AND NON-EXAMINING PHYSICIANS' OPINIONS DOES NOT WITHSTAND SCRUTINY ON REVIEW

In Plaintiff's first issue, she asserts that the ALJ erred in weighing assessments of treating, examining and non-examining physicians and in determining Plaintiff's RFC. (JS at 3, et seq.)

In his decision, the ALJ determined Plaintiff's RFC as permitting her to lift and carry 20 pounds occasionally, 10 pounds frequently, sitting, standing and walking six hours each in an eight-hour work day. There are other exertional limitations which are assessed. (AR 16-17.

In making his determination, the ALJ stated the following:

> "In this case, the general consensus amongst medical sources offering opinions, encompassing a period of 12 months or more, is that the [Plaintiff] remains capable of performing light exertion or greater (exhibit citations). I accepted the State Agency evaluating consultant's assessment, specifically because it addresses all exertional and non-exertional areas of functioning identified by the regulations. The other sources, while an [sic] essential agreement, were more generalized and less specific."

(AR 17.)

The ALJ reviewed the opinions of various examining and non-examining physicians. Since the ALJ accepted the opinion of the State Agency evaluating consultant's assessment, the Court will begin with that. Dr. Talcherkar, the State Agency physician, made an assessment in May 2006 that indicated Plaintiff could occasionally lift 20

pounds, frequently lift 10 pounds, and stand and/or walk for a total of six hours in an eight-hour work day. (AR 250.) It was this opinion which the ALJ adopted, essentially, in his decision.

As noted, the ALJ specifically stated that the "general consensus amongst medical sources" was that Plaintiff was capable of performing light exertional work, or greater. (AR 17.) But this is not an accurate recitation of the evidence. In August 2006, Dr. Anant Ram examined Plaintiff in the capacity of Qualified Medical Examiner ("QME"). (AR 283-297.) Dr. Ram performed a complete physical examination, and concluded (after conducting his examination and thoroughly reviewing Plaintiff's medical records) that Plaintiff was limited to sedentary (seated) work with marked limitations in lifting weight. (AR 296.)

The ALJ rejected Dr. Ram's opinion.[1]

The ALJ's assessment of Dr. Ram, as set forth in his decision, indicates that Dr. Ram's credibility was completely devalued because he examined Plaintiff for purposes of her workers compensation claim. As such, the ALJ indicated that,

> "his opinions are not entitled to the weight generally afforded those of treating sources. Further, he was retained in a workers compensation litigation setting, which is highly adversarial in nature where medical advocacy is commonplace ... As a result, I have serious concerns regarding his impartiality and objectivity."

(AR 17.)

---

[1] It should be noted that Dr. Ram examined Plaintiff after the State Agency Consultant, Dr. Talcherkar, completed his report. Thus, Dr. Talcherkar did not have the benefit of Dr. Ram's report at the time he made his assessment.

4

1    Moreover, the ALJ further depreciated Dr. Ram's findings by
2 comparing them with another orthopedic consultant who performed a
3 consultative examination three weeks earlier (Dr. Rabinovich; see
4 infra) who came to a different conclusion regarding Plaintiff's RFC.
5 Without any basis in fact, the ALJ concluded that Dr. Rabinovich's
6 opinion "was not to the [Plaintiff's], nor her attorney's liking." (AR
7 20.)  The Court notes that there is absolutely nothing in this record
8 which indicates that Dr. Ram's opinion was specifically solicited by
9 Plaintiff or her attorney for purposes of obtaining a more favorable
10 evaluation or other opinion than that rendered by Dr. Rabinovich.

11    Dr. Rabinovich in fact did examine Plaintiff on July 27, 2006,
12 approximately three weeks before Dr. Ram's examination. (AR 272-282.)
13 The Court's comparison of the findings of Dr. Ram and Dr. Rabinovich
14 leads to a fair conclusion that they were substantially similar,
15 except in the assessments of exertional capacities which they
16 rendered.  Dr. Rabinovich also examined Plaintiff with regard to a
17 QME. (AR 272.)  Despite the fact that the examinations were performed
18 for identical purposes, the ALJ's decision makes no pejorative
19 comments regarding Dr. Rabinovich, with regard to the reason for his
20 examination.  Such comments, however, are addressed by the ALJ with
21 regard to examinations done on May 18 and May 25, 2005 by Dr.
22 Giacobetti, who also limited Plaintiff to modified less than sedentary
23 work. (AR 200-206.)[2]

---

[2]    Although Plaintiff's characterization of her first issue might appear to be based on an assessment that Dr. Giacobetti was her treating physician, for various reasons, the Court determines that Dr. Giacobetti was a consultative examiner.  The record indicates that he saw Plaintiff on two occasions, spaced one week apart, and his reports are consistent with those prepared by consultative examiners, in that
(continued...)

The ALJ rejected Dr. Giacobetti's assessment of Plaintiff's ability to do less than sedentary work because he failed to have a "strong longitudinal understanding of the [Plaintiff's] medical condition, contemplated of treating sources by the regulations." (AR 21.) This cryptic statement, as the Court will discuss in the body of its decision, fails to even accord Dr. Giacobetti credibility as an examining physician.

### A.  Applicable Law.

The appropriate manner in which to evaluate opinions of examining and non-examining physicians was explicitly discussed by the Court in Lester v. Chater, 69 F.3d 1453 (9th Cir. 1995). There, the Court indicated that the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Further, where the opinion of an examining physician is uncontradicted, in order to reject it, the Commissioner must provide "clear and convincing" reasons. Where contradicted, the rejection must be supported by specific and legitimate reasons supported by substantial evidence in the record. (Id. at 1464, citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

Social Security regulations make it clear that in making a determination of disability, every medical opinion must be evaluated. (See 20 C.F.R. §404.1527(d).) Moreover, the weight that is given to a physician's opinion depends upon the extent to which it is supported

---

$^{2}$(...continued)
they do not include indications of continuing treatment, or even recommendations for treatment. After the second examination, Dr. Giacobetti indicates that Plaintiff would return in three weeks, but there is no indication that she in fact did.

by specific and clinical findings. (20 C.F.R. §404.1527(d)(3).)

Nowhere in the regulations, or in any reported case decision, is there an articulated principle that a physician who renders an opinion in a Workers Compensation proceeding is entitled to depreciated credibility with regard to his or her findings and conclusions. In fact, the opposite is true. While workers compensation disability ratings are not controlling in disability cases that are decided under the Social Security Act, they must still be evaluated, consistent with all medical opinions. See Macre v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Booth v. Barnhart, 181 F.Supp.2d 1099 (C.D. Cal. 2002).

**B.    Analysis.**

The ALJ's decision-making protocol here is somewhat troubling to the Court. The ALJ was responsible for evaluating a series of opinions of consulting examining physicians. In addition, the ALJ evaluated the opinion of a non-examining State Agency physician, ultimately adopting that physician's opinion. The problem is that two of the three opinions of the examining physicians (that is, the opinions of Dr. Ram and Dr. Giacobetti) assess that Plaintiff was capable of less than light work, while the opinion of Dr. Rabinovich assessed an ability to do light work. Each of these physicians performed independent physical examinations. Yet, the opinions of Dr. Ram and Dr. Giacobetti were almost completely depreciated for improper reasons; in Dr. Ram's case, because he performed an examination for workers compensation purposes, and in Dr. Giacobetti's case, because he didn't have a "strong longitudinal understanding" of Plaintiff's medical condition. But no consultative examiner has a longitudinal understanding as would be characteristic of a treating physician.

This is no reason to depreciate the opinion of one consultative examiner as against another. Moreover, the ALJ's rejection of Dr. Ram is extreme and speculative. The ALJ's comment that workers compensation cases are "highly adversarial in nature" as a basis to depreciate Dr. Ram's opinion has no place in a Social Security decision. Moreover, there is no evidence in the record that Plaintiff or his counsel sought Dr. Ram's opinion three weeks after she was examined by Dr. Rabinovich for any improper purpose. There is absolutely nothing in the record to substantiate the ALJ's speculative conclusion that Dr. Ram's opinion was sought because Dr. Rabinovich's conclusions were not to Plaintiff or her attorney's "liking." Unfortunately, these comments, which are repeated numerous times in the ALJ's decision, reflect an apparent bias, either against opinions of physicians who are employed in the workers compensation context, or against Plaintiff or her attorney as having improper motives. Clearly, this case must be remanded for further hearing and determination in order to allow an unbiased and proper evaluation of the conflicting opinions of examining, non-treating physicians. The Court, however, does not have confidence that this ALJ can render an unbiased opinion with regard, particularly, to Dr. Ram, or even to Dr. Giacobetti. For that reason, the Court will take the rare but in this case necessary step of ordering that on remand, this matter be assigned to a new ALJ.

### III

**THE ALJ DID NOT PROPERLY CONSIDER THE EFFECT OF PLAINTIFF'S DIABETES**

It appears that Plaintiff was first diagnosed with diabetes in 1996. (See AR at 424.) In discussing this illness, however, the ALJ

indicated that there is little medical evidence that Plaintiff's diabetes would preclude her from performing a range of light exertional work. (AR 18.) The Court has significant doubt about the correctness of this conclusion, for reasons to be discussed herein.

The ALJ relied heavily upon an extensive report by Dr. Hirsch, a board-certified physician in internal medicine, performed on November 3, 2006. (AR 423-480.) Much of the premise for the ALJ's analysis of Dr. Hirsch's lengthy report is that if Plaintiff were compliant with her medication regimens, her diabetes could be controlled. Indeed, the Commissioner begins his portion of the discussion of this issue by asserting that "diabetes is a treatable medical condition that, properly managed, does not preclude an individual from working." (JS at 13, citation omitted.) But, a closer examination of Dr. Hirsch's report indicates that in Plaintiff's case, it is unclear whether such therapies as insulin administration would have been effective with her condition, and certainly, there was also a very substantial question as to whether they would currently be effective. Moreover, for purposes of determining her current disability, the effect on her physical condition and ability to function must be understood.

Dr. Hirsch's discussion includes the following important section:

> "It is important that non-physician readers of these reports understand that [Plaintiff] has an extremely severe case of the metabolic syndrome. The metabolic syndrome is the triad of hypertension, hyperlipidemia, and hyperglycemia. Individuals with metabolic syndrome are often obese and have significant insulin resistance, such that typical doses of insulin are ineffective. One can see that [Plaintiff] has never manifested adequate control of

9

her diabetes." (AR 465.)

Dr. Hirsch continues by indicating that Plaintiff's diabetes "has been at the extremes of poor control. These extremes almost cost [Plaintiff] her life. The poor control has continued, unabated." (AR 466.)

Dr. Hirsch opined that Plaintiff has diabetic end organ damage in her eyes. He further concluded that she has diabetic nephrophathy. He stated, "this diabetic illness has pursued its natural history; this is the manner by which diabetes ravages millions of Americans annually." (Id.)

In other words, the Commissioner's premise, which seems to be that the effects of diabetes on Plaintiff's physical health can be attributed to her willful noncompliance with her medication regimen, appears to be an unsupported premise. A fair reading of Dr. Hirsch's report is that Plaintiff has a metabolic syndrome which has a corresponding characteristic of significant insulin resistance. (See AR at 465. It is facile to simply attribute Plaintiff's apparent dire health with regard to her diabetes to, for example, willful dietary noncompliance, as the Commissioner seems to argue. (See JS at 14-15.) Whether or not Dr. Hirsch concluded that Plaintiff is disabled on an industrial basis does not resolve the question of whether Plaintiff's RFC is impacted by her diabetes. The Court notes that the Commissioner routinely (and correctly) argues that an assessment of disability by a physician is not entitled to deference from the Social Security Administration, since it is not the physician who determines disability in the Social Security context. Yet, in this case, the

10

Commissioner avidly cites Dr. Hirsch as being the authority on whether or not Plaintiff is disabled. Finally, this ALJ's obvious aversion to physicians who are associated with a claimant in the workers compensation context permeates his decision, including his analysis of any impact of Plaintiff's diabetes on her RFC.

On remand, the issue of any effect on Plaintiff's RFC from her diabetes will be examined <u>de</u> <u>novo</u>. This ALJ's decision will have no precedental value whatsoever.

The Court will also here address Plaintiff's third issue, which concerns the ALJ's credibility assessment. Substantial time need not be devoted to a discussion of this issue, since Plaintiff's credibility will have to be re-weighed <u>de</u> <u>novo</u> on remand. In depreciating Plaintiff's credibility, however, the ALJ improperly relied upon Plaintiff's alleged "chronic noncompliance" with her diabetes medications, stating that "chronic noncompliance simply is not consistent with someone who is truly experiencing profound diabetes-related symptoms, as the [Plaintiff] alleges." (AR 25.) As the Court has exhaustively discussed with regard to the second issue, there are serious concerns raised about whether Plaintiff is willfully noncompliant, and, moreover, whether diabetes medications would have controlled her diabetes. Moreover, utilizing conflicting MMPI results to assess Plaintiff's credibility is misplaced. The MMPI testing was administered by psychologists in the workers compensation context, both on Plaintiff's side, and on the employer's side, and the results were conflicting. There is evidence, however, that Plaintiff did not exaggerate her psychological disabilities, but attempted to minimize them and present herself in a favorable light. Nevertheless, the Commissioner concludes that this is still evidence of untruthfulness.

"Simply put, Plaintiff did not tell the truth." (JS at 21.)  It seems somewhat cynical to the Court that if an individual tries to present herself in a favorable light, and does not exaggerate debilitating psychological symptoms, that individual should be punished with a poor credibility rating.  Nevertheless, this is another issue which can be addressed *de novo* on remand.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: December 16, 2009              /s/
                                      VICTOR B. KENTON
                                      UNITED STATES MAGISTRATE JUDGE